# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

BELJICA Y. JIMINEZ GONZALEZ,

        Plaintiff,

        v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

        Defendant.

CIVIL ACTION NO. 3:21-cv-00012

(SAPORITO, M.J.)

## **MEMORANDUM**

In this matter, the plaintiff, Beljica Y. Jiminez Gonzalez, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I. BACKGROUND

On February 6, 2019, Gonzalez protectively filed a claim for disability insurance benefits, asserting a disability onset date of January 31, 2019. The claim was initially denied by state agency reviewers on May 28, 2019, and upon reconsideration on September 27, 2019. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on March 24, 2020, before an administrative law judge, Lawrence J. Neary (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Andrew Caporale. The plaintiff was represented by counsel at the hearing.

On April 7, 2020, the ALJ denied Gonzalez's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Gonzalez was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Gonzalez had not engaged in substantial gainful activity since her alleged disability onset date. At step two, the ALJ found that Gonzalez had the severe impairments of:

myofascial cervical pain; chronic bilateral low back pain without sciatica; diabetes; obesity; major depressive disorder; and unspecified anxiety disorder.

At step three, the ALJ found that Gonzalez did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Gonzalez's limitations in four broad functional areas as a result of her mental disorders, finding moderate limitations in three functional areas—(1) understanding, remembering, or applying information, (2) interacting with others, and (3) concentrating, persisting, or maintaining pace—and mild limitations in the fourth area—adapting or managing oneself. *See generally* 20 C.F.R. § 404.1520a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential evaluation process, the ALJ assessed Gonzalez's residual functional capacity ("RFC"). *See*

*generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Gonzalez had the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b),[2] with the following limitations:

> [S]he can occasionally kneel, crouch, crawl, and climb ramps and stairs; and can never climb ladders, ropes or scaffolds. She has a mental capacity limited to simple, routine tasks with only occasional changes in the work setting. She can occasionally interact with supervisors, coworkers, and the public.

(Tr. 23.)

In making these factual findings regarding Gonzalez's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational

---

[2] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

expert, the ALJ concluded that Gonzalez was capable of performing her past relevant work as a hand packager, DOT # 920.587-018, as actually performed.[3] Based on this finding, the ALJ concluded that Gonzalez was not disabled for Social Security purposes.[4]

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on December 1, 2020, making the ALJ's April 2020 decision the final decision of the Commissioner subject to judicial review by this court.

Gonzalez timely filed her complaint in this court on January 5, 2021. The Commissioner has filed an answer to the complaint, together

---

[3] As generally performed in the national economy, this occupation is typically performed at a *medium* exertional level, but the ALJ found that this work as actually performed by Gonzalez in the past was light work. *See* DICOT 920.587-0180, 1991 WL 687916 ("packager, hand").

[4] Although the ALJ found Gonzalez not disabled at step four, he also recorded an alternative finding that Gonzalez was capable of performing other work that exists in significant numbers in the national economy, which would in turn dictate a not-disabled finding at step five. Based on Gonzalez's age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Gonzalez was capable of performing the requirements of representative occupations such as bakery worker conveyor liner, DOT # 524.687-022, inspector and hand packager, DOT # 559.687-074, and cleaner, housekeeping, DOT # 323.687-014. *See* DICOT, 524.687-022 1991 WL 674401 ("bakery worker, conveyor line"); DICOT, 559.687-074 1991 WL 683797 ("inspector and hand packager"); DICOT, 323.687-014 1991 WL 672783 ("cleaner, housekeeping").

with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits administrative decisions).

Gonzalez asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ erred in determining that her fibromyalgia was a non-medically determinable impairment at step two of the five-step sequential evaluation process, and in failing to consider this impairment in later steps; (2) the ALJ erred in finding certain of her impairments "not severe" at step two of the five-step sequential evaluation process, despite compelling evidence to the contrary; (3) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of non-examining state agency

medical and psychological consultants; and (4) the ALJ failed to properly evaluate the medical opinion of her treating physician.[5]

## A. Step Two Non-Medically Determinable Impairment

At step two, the ALJ considered whether Gonzalez had a medically determinable impairment of fibromyalgia. The ALJ reviewed the medical evidence of record, stating:

> The record also shows that the claimant was assessed with fibromyalgia; however, the record fails to establish consistent findings of 11 out of 18 tender points, treatment by a rheumatologist, or a need for significant ongoing treatment for fibromyalgia. The undersigned has considered [Social Security Ruling] 12-2p, and finds the requirement that other disorders or co-occurring conditions that could cause the claimant's symptoms were excluded has not been met. Therefore, the undersigned finds fibromyalgia is not a medically determinable impairment.

(Tr. 21.) As a consequence, the ALJ did not consider any impairments as a result of fibromyalgia in his evaluation of Gonzalez's RFC.

---

[5] The plaintiff's brief articulated three conclusory, extremely general claims of error: (1) the ALJ failed to consider the limitations in the RFC from those of the impairments which the ALJ found to be severe; (2) the ALJ failed to consider the limitations in the RFC from those of the impairments which the ALJ found to be non-severe, or never mentioned; and (3) the ALJ failed to give proper weight to the medical opinion of her treating physician. Although not clearly articulated by plaintiff's counsel, a close reading of the plaintiff's brief reveals that these very generalized grievances rest on the specific errors we have articulated above.

A "medically determinable impairment" is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The plaintiff points to multiple references in the medical records noting a diagnosis of fibromyalgia, as well as evidence of potential symptoms of fibromyalgia, and she argues that the ALJ erred in failing to consider her fibromyalgia under Social Security Ruling 12-2p.[6]

In Ruling 12-2p, the agency described "the evidence we need to establish [a medically determinable impairment] of [fibromyalgia]" and how it evaluates that evidence. Soc. Sec. Ruling 12-2p, 2012 WL 3104869, at*2. In particular, the ruling provides that an ALJ "cannot rely upon the

---

[6] The plaintiff also references the agency's Program Operations Manual System ("POMS"), arguing that the ALJ should have considered her fibromyalgia under POMS DI 24515.076 as well. But statements in POMS lack the force of law and create no judicially enforceable rights. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) ("[T]he Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA."); *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996) ("POMS is the authorized means for issuing official Social Security policy and operating instructions. These regulations do not have the force of law.") (citation omitted); *Bordes v. Comm'r of Soc. Sec.*, 235 Fed. App'x 853, 859 (3d Cir. 2007) ("POMS and HALLEX provisions . . . lack the force of law and create no judicially-enforceable rights.").

physician's diagnosis alone." *Id.* The medical record must include not only a *diagnosis* of fibromyalgia, but also evidence meeting specific criteria set forth in Ruling 12-2p: (1) "[a] history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted . . . for at least 3 months"; (2) either (A) at least 11 of 18 positive tender points on physical examination, or (B) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* at *2–*3. Finally, the diagnosis of fibromyalgia must also not be inconsistent with other evidence in the record. *Id.* at *2.

The plaintiff's claim of error is entirely without merit. As evidenced by the passage quoted above, the ALJ *explicitly* considered whether she had a medically determinable impairment of fibromyalgia, and he *explicitly* considered the provisions of Social Security Ruling 12-2p. The third criteria specified above was dispositive, with the ALJ finding that the medical evidence of record failed to satisfy the Ruling 12-2p requirement that other disorders that could cause the claimant's

symptoms were excluded. (*See* Tr. 21.)

Thus, in the absence of sufficient evidence to satisfy the Ruling 12-2p criteria, we find there is substantial evidence to support the ALJ's finding that Gonzalez's fibromyalgia was not a medically determinable impairment. Moreover, because the ALJ is only required to consider medically determinable impairments, *see* 20 C.F.R. §§ 404.1521, 404.1545(a)(2), the ALJ's failure to consider the plaintiff's alleged fibromyalgia in determining her RFC was not in error. *See Switzer v. Comm'r of Soc. Sec.*, No. 1:18-cv-16554-NLH, 2019 WL 5485526, at *6 (D.N.J. Oct. 24, 2019) (finding that, in determining a claimant's RFC, "the ALJ does not need to consider any alleged conditions that are not medically determinable").

**B. Step Two Non-Severe Impairments**

At step two, the ALJ also noted that Gonzalez had a history of angina, hyperlipidemia, sleep disturbance, gastro esophageal reflux disease (GERD), carpal tunnel syndrome, hypertension, and thyroid nodules, but there was little evidence that these impairments more than minimally limited her ability to perform sustained work tasks. Thus, the ALJ found these impairments to be non-severe. (Tr. 21.) The plaintiff

contends that this determination was in error.

But notwithstanding the ALJ's finding with respect to the severity of the foregoing conditions, the ALJ found that Gonzalez had several severe impairments: myofascial cervical pain; chronic bilateral low back pain without sciatica; diabetes; obesity; major depressive disorder; and unspecified anxiety disorder. (Tr. 20.) The ALJ then proceeded on to step three of the five-step sequential evaluation process.

At step two, a claimant bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d

486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, the ALJ found in Gonzalez's favor at step two, finding that she had several other severe impairments, and then proceeded on to step three of the five-step sequential evaluation process. Thus, any error with respect to evaluation of the severity of her conditions of angina, hyperlipidemia, sleep disturbance, GERD, carpal tunnel syndrome, hypertension, and thyroid nodules at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed. App'x at 88.

### C. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of

record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for

benefits in February 2019. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.[7]

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the

---

[7] We note that counsel for the plaintiff has mistakenly premised his entire argument on this point—that the treating physician's opinion was entitled to controlling weight, or at least great weight—on the old regulations, which no longer apply. This is not the only case in which this same attorney has made this same, fundamental error. *See, e.g.*, Pl.'s Br., *Rivera v. Kijakazi*, Case No. 3:21-cv-01574 (M.D. Pa. filed Feb. 14, 2022) (examining physician), ECF No. 12; Pl.'s Br., *Broaddus v. Kijakazi*, Case No. 3:20-cv-01418 (M.D. Pa. filed July 13, 2021) (treating physician), ECF No. 21; Pl.'s Br., *Torres v. Kijakazi*, Case No. 3:20-cv-02049 (M.D. Pa. filed July 1, 2021) (treating physician), ECF No. 15; Pl.'s Br., *Martinez v. Kijakazi*, Case No. 3:20-cv-01550 (M.D. Pa. filed June 7, 2021) (treating physician), ECF No. 19. We encourage counsel to revisit and revise his legal boilerplate on this issue before filing any future briefs.

agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL

5918706, at *4; *see also* 20 C.F.R. § 404.1520c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 404.1520c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with* *id.* § 404.1527(c)(3) (supportability), and *id.*

§ 404.1527(c)(4) (consistency).[8] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Densberger*, 2021 1172982, at \*8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 404.1520c(b)(2); *Densberger*, 2021 WL 1172982, at \*8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at \*8; *see also* 20 C.F.R. § 404.1520c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. *Prior Administrative Findings*

The ALJ considered the prior administrative findings in this case

---

[8] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

finding them to be "partially persuasive." (Tr. 26, 27.)

The prior administrative findings included the opinions of state agency medical consultant, David Ferner, D.O., who had found the claimant capable of performing a full range of light work, and Michael J. Brown, D.O., who had found the claimant capable of performing light work with some postural limitations. Based on their review of Gonzalez's medical records, Dr. Ferner and Dr. Brown each found that Gonzalez was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Brown additionally found that Gonzalez was capable of frequent balancing or stooping and occasional kneeling, crouching, crawling, or climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds. In evaluating the opinions of Dr. Ferner and Dr. Brown together, the ALJ found that:

> Insofar as these statements indicate the claimant can perform light work, occasionally kneel, crouch, crawl, climb ramps and stairs, and never climb ladders, ropes, or scaffolds; they are generally supported by the longitudinal treatment notes, which generally show the claimant is in no acute distress with normal gait, good range of motion, intact cranial nerves, full strength, full grip strength, intact sensation, normal and equal deep tendon reflexes, capillary refill in less than two seconds, and no edema. The remainder of these statements are unsupported by the claimant's treatment with physical therapy, a TENS device, and

medication. Thus, the undersigned finds Dr. Ferner's
and Dr. Brown's statements are partially persuasive.

(Tr. 26 (citations omitted).)

The prior administrative findings also included the opinions of state
agency psychological consultants, Karen Plowman, Psy.D., and Thomas
Fink, Ph.D., both of whom had found that Gonzalez had only mild
limitations in each of the four broad functional areas considered at step
two.[9] In evaluating the opinions of Dr. Plowman and Dr. Fink together,
the ALJ found that:

> Insofar as they state the claimant has mild limitations
> adapting or managing herself, this statement is
> generally supported by the longitudinal treatment
> notes, which generally show the claimant is fully
> oriented and cooperative with congruent affect, normal
> appearance, neat dress and grooming, normal eye
> contact, appropriate manner, normal speech, normal
> thought process, logical thought content, normal
> cognition, normal memory, normal behavior, intact
> decision making ability, good fund of knowledge, good
> insight, and normal judgment. The remainder of these
> statements understate the claimant's limitations and
> are inconsistent with the claimant's treatment with

---

[9] Under the applicable regulations, when mental limitations are
rated as "mild," they are generally found to be non-severe, and thus need
not be considered at later steps in the five-step evaluation process. *See*
20 C.F.R. § 1520a(d)(1). Here, neither of the state agency psychological
consultants recorded findings with respect to Gonzalez's mental residual
functional capacity or any specific limitations, apparently based on their
across-the-board findings of "mild" mental functional limitations.

> counseling and medication. Accordingly, the undersigned finds Dr. Plowman's and Dr. Fink's statements are partially persuasive.

(Tr. 27 (citations omitted).)

The plaintiff primarily objects to this evaluation of the state agency medical and psychological consultants' findings and opinions based on the fact that none of the four consultants actually examined Gonzalez in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence when the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

The plaintiff also suggests that the ALJ's evaluation of the opinions of these four non-examining sources was lacking because it failed to more robustly cite specific medical evidence that he found supportive of the consultants' findings. But "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v.*

*Barnhart*, 94 Fed. App'x 130, 133 (3d Cir. 2004); *see also Phillips v. Barnhart*, 91 Fed. App'x 775, 780 n.7 (3d Cir. 2004) ("A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it.") (citation omitted); *Kupiec v. Kijakazi*, No. 20-1240, 2021 WL 5015775, at *2 (W.D. Pa. Oct. 28, 2021) ("An ALJ is not required to discuss or cite every piece of evidence in the record."). It is only necessary that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions, which it does here. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's physical and mental limitations, including the medical opinions of the state agency medical and psychological consultants, Dr. Ferner, Dr. Brown, Dr. Plowman, and Dr. Fink, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## 2. Treating Physician Opinion

On January 27, 2020, Gonzalez's treating physician, Joseph A. Troncale, M.D., completed a physical residual functional capacity questionnaire. Dr. Troncale noted that Gonzalez had been a long-term patient at his medical practice. He reported a diagnosis of fibromyalgia with a guarded prognosis. He reported her symptoms as including neck and back pain, as well as elbow pain. When asked to identify clinical findings and objective signs, he stated: "Patient has complaints. She is in pain management." He reported that she had been to a pain management clinic, and they had suggested trigger point injections, which had not yet been administered.[10] When asked if the patient was a malingerer, Dr. Troncale responded: "difficult to assess." He noted that emotional and psychological factors may have been affecting her condition. Dr. Troncale opined that Gonzalez's experience of pain or other symptoms was severe enough to frequently interfere with her attention and concentration to perform even simple tasks.[11] He opined that Gonzalez was capable of performing only low-stress jobs. He opined that Gonzalez was capable of

---

[10] We note that the pain management clinic's treatment records indicate that she had repeatedly declined trigger point injections.

[11] The form defined "frequently" as 34% to 66% of workday.

sitting up to four hours per workday, and standing or walking up to two hours per workday, with no more than 30 minutes of uninterrupted sitting and no more than 10 minutes of standing at one time. He further opined that Gonzalez was required to take a 10-minute break from work every hour. Dr. Troncale opined that Gonzalez was capable of lifting or carrying up to 10 pounds rarely and less than 10 pounds only occasionally. He opined that she was subject to certain postural limitations: no more than occasionally turning her head left or right, looking up, holding her head static, crouching, squatting, or climbing stairs, and only rarely looking down, twisting, stooping, or climbing ladders. He found that Gonzalez had no significant limitations with reaching, handling, or fingering, but then opined that she could perform handling no more than 10% of the time, fingering no more than 20% of the time, and reaching no more than 20% of the time. Dr. Troncale opined that Gonzalez's impairments or treatment would cause her to be absent from work about four days per month, and that her impairments would cause her to be "off task" more than 15% of a workday. (Tr. 907–12).

Upon review, the ALJ found that this opinion was unpersuasive. In particular, the ALJ found Dr. Troncale's functional capacity assessment

was:

>unsupported by his treatment notes, which largely show the claimant has normal range of motion and capillary refill in less than two seconds. This statement is also unsupported because it is a checklist with minimal explanation. Additionally, this statement is inconsistent with itself as Dr. Troncale noted it is "difficult to assess" if the claimant is a malingerer, and Dr. Troncale indicated the claimant had both significant limitations handling and fingering and none of her "impairments affect her ability to use her hands." Further, this statement is inconsistent with the claimant's activities of daily living, which show[] the claimant . . . can prepare meals, do dishes, do light dusting, take out small bags of trash, ride in a car, and shop in stores. This statement is also inconsistent with the progress notes, which mostly show the claimant is in no acute distress with normal gait, good range of motion, intact cranial nerves, full strength, full grip strength, intact sensation, normal and equal deep tendon reflexes, capillary refill in less than two seconds, and no edema. Therefore, the undersigned finds Dr. Troncale's statement is unpersuasive.

(Tr. 26–27 (citations and brackets omitted).)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency, expressly articulating his findings on these required factors. He also expressly addressed an additional factor based on the nature of the treating physician's assessment as a form report. *See, e.g.*, *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's

obligation is only to check a box or fill in a blank are weak evidence at best.").

Accordingly, we find the ALJ's evaluation of the opinion of treating physician Dr. Troncale is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Gonzalez was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: April 6, 2022                    ***s/Joseph F. Saporito, Jr.***
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge